UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                               :

JERROLD BLACK,                         :
                               :

              Plaintiff,         :
                               :                    05 Civ. 108 (GEL)

           -v-                 :
                               :              **OPINION AND ORDER**

PITNEY BOWES, et al.,           :
                               :

             Defendants.       :
                               :
------------------------------------------------------------x

Christopher P. Foley, McCormick Dunne & Foley,
New York, New York, for plaintiff.

Nicole A. Diller, Morgan, Lewis & Bockius, L.L.P.,
New York, New York, for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiff Jerrold Black brings this action pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., challenging denials of disability

benefits by his employer, defendant Pitney Bowes, Inc. ("Pitney Bowes"), defendant Pitney

Bowes, Inc. Long-Term Disability Plan (the "Plan"), its retirement plan, and defendant

Employee Benefits Committee of Pitney Bowes, Inc. (the "Committee" or the "Administrator"),

the plan administrator.  (Amended Compl. ¶¶ 4-6.)

      On December 11, 2006, the parties submitted to the Court a jointly composed letter,

pursuant to the undersigned judge's Individual Rule 2(F), describing several discovery disputes.

Letter from Christopher P. Foley and Nicole A. Diller to the Court, Dec. 11, 2006 (the "Joint

Submission").  The disputes concerned the availability of the attorney-client privilege to plan

administrators with fiduciary duties under ERISA, the discoverability of evidence not considered

by plan administrators in making benefits determinations, and the lateness of plaintiff's
interrogatories.  With the exception of the plaintiff's request for documents withheld as
privileged, defendants will be directed to comply with plaintiff's discovery requests.

## I.   <u>Documents Withheld As Privileged</u>

On March 11, 2005, plaintiff requested the production of all documents generated in the
course of making the determination of plaintiff's long-term disability benefits.  Defendants
produced some documents, but did not produce documents that they felt were protected by the
attorney-client privilege and the work-product doctrine.  (Joint Submission at 3; <u>id</u>. Exs. G, H, I.)
The parties now ask for clarification of their rights with respect to those documents.

### A.   **Standards on the Attorney-Client Privilege and the Fiduciary Exception**

In general, the attorney-client privilege protects legal advice sought from an attorney in
confidence and not disclosed.  <u>See</u> <u>In re Grand Jury Subpoena Duces Tecum Dated Sept. 15,
1983</u>, 731 F.2d 1032, 1036 (2d Cir. 1984) (internal quotation marks omitted).  In the ERISA
context, however, there is a "fiduciary exception" to the attorney-client privilege.  In matters of
plan administration, such as determinations regarding whether to grant or deny benefits,
employers and plan employers are fiduciaries under ERISA, <u>see</u> 29 U.S.C. § 1002(21), and as
such have "an obligation to provide full and accurate information to the plan beneficiaries
regarding the administration of the plan."  <u>In re Long Island Lighting Co.</u>, 129 F.3d 268,
271-272 (2d Cir. 1997).  This obligation includes a duty to make "available to the beneficiary,
upon request, any communications with an attorney that are intended to assist in the
administration of the plan."  <u>Id</u>.  In other words, "an employer acting in the capacity of ERISA

fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration."  Id.

Some courts see this doctrine not as a true exception to the attorney-client privilege, but as an extension of the privilege to the beneficiary, who by virtue of the administrator's fiduciary duty is the true client of the attorney providing the advice.  "Put another way, the attorneys are considered to be working for the fund and its beneficiaries and not for the fiduciary/administrator."  Helt v. Metro. Dist. Com'n, 113 F.R.D. 7, 9 (D.Conn. 1986).  Other courts see it as a true exception to the attorney-client privilege, arising from the duty to disclose information concerning plan administration to plan beneficiaries.  See United States v. Mett, 178 F.3d 1058, 1063 (9th Cir. 1999) ("Viewed in this light, the fiduciary exception can be understood as an instance of the attorney-client privilege giving way in the face of a competing legal principle.").

Whatever its origins, courts agree that the applicability of the exception depends on the purpose of the communication.  "The employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries."  Long Island Lighting, 129 F.3d at 271.  Thus,

> the case authorities mark out two ends of a spectrum.  On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries.  On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

Mett, 178 F.3d at 1064.  The privilege is maintained when fiduciaries retain counsel to defend themselves because "[w]hen an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries."  Geissal v. Moore Med. Corp., 192 F.R.D. 620, 624 (E.D.Mo. 2000).  Because it can be difficult to determine whether the purpose of a seeking legal advice is to fulfill an administrator's fiduciary duties or to avoid litigation accusing him of failing to fulfill those duties, courts have avoided standards that make it too easy or too difficult to claim the privilege.

In Mett, the Ninth Circuit rejected an argument that "the attorney-client privilege should be defeated whenever otherwise privileged legal advice 'relates to' fiduciary matters," 178 F.3d at 1064, because under that approach "any legal advice concerning an ERISA plan could be construed as relating, at least indirectly, to the administration of the plan," which in turn would mean that even communications between defendants and their counsel during the subsequent litigation were not privileged.  Id. at 1065.  Moreover, "[w]hen an ERISA trustee seeks legal advice for his own protection, the legal fiction of 'trustee as representative of the beneficiaries' is dispelled, notwithstanding the fact that the legal advice may relate to the trustee's administration of the trust."  Id.  Finally, the Ninth Circuit noted that the adoption of a broad fiduciary exception covering all materials pertaining to plan administration would discourage trustees from seeking legal advice.  Id.

On the other hand, it would be equally inappropriate to hold that the mere prospect of litigation renders communications between fiduciaries and counsel privileged, because the

prospect of litigation is always present in decisions about whether to grant or deny benefits. Thus, courts have properly rejected the view that a mere awareness of the possibility of post-decisional litigation or desire to avoid such litigation is enough to justify applying the fiduciary exception.  "Because denying benefits to a beneficiary is as much a part of the administration of a plan as conferring benefits to a beneficiary, the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege." Lewis v. UNUM Corp. Severance Plan, 203 F.R.D. 615, 620 (D.Kan. 2001).  See also Geissal, 192 F.R.D. at 625 ("Because the denial of claims is as much a part of the administration of a plan as the decision-making which results in no unhappy beneficiary, the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege.")

Between these two extremes, courts must undertake a fact-specific inquiry to determine whether the purpose of the withheld communications was to seek legal advice with respect to specific litigation.  There should be little need for administrators to consult counsel regarding a specific benefits determination after that benefits determination is made, and so in some cases, courts have considered it highly relevant that communications occurred after the challenged benefits determination took place.  See Bell v. Pfizer Inc., No. 03 Civ. 9945 (KMW), 2006 WL 2529762, at *7 (S.D.N.Y. Aug. 31, 2006) (holding that the fiduciary exception did not apply to communications that occurred after the challenged determination).[1]  Of course, the fact that a

---

[1] In Bell, the district court overturned a magistrate judge's finding that "all of the challenged documents that were created before August 21, 2003 fall within the fiduciary exception to the attorney-client privilege and must be produced," Bell v. Pfizer, Inc., No. 03 Civ. 9945 (HBP), 2005 WL 1560488, at * 7 (S.D.N.Y. July 5, 2005), but only because the magistrate judge had wrongly concluded that the date of the determination was the date plaintiff received

consultation took place after the commencement of litigation would be even more suggestive of

a concern with personal exposure, rather than plan administration.  In other cases, courts have

found that even communications that occurred prior to a challenged decision and prior to the

initiation of litigation were protected by attorney-client privilege when "[t]rouble was in the air."

Mett, 178 F.3d at 1064 (holding that communications prior to the initiation of litigation were

privileged because the content of the memos concerned the trustees' personal exposure, and

because "[t]he defendants . . . had good reason to seek advice from [counsel] regarding their

personal exposure to additional civil and criminal liabilities arising from the pension plan

withdrawals.").  What emerges from these cases is an inquiry that centers on whether the purpose

of the communications was legal advice regarding the legal liability of plan administrators in

imminent or pending litigation, as opposed to advice concerning a general fear of liability or

advice concerning plan administration itself.

### B.    Whether the Withheld Documents Are Subject to the Fiduciary Exception

As discussed above, the time period in which withheld communications took place can be

highly informative as to their purpose.  Because plaintiff challenges more than one determination

to deny benefits, however, there is more than one time period relevant to the question of whether

the withheld communications in this case post-date the challenged determination and the

initiation of litigation.

Plaintiff advised defendants in a letter of December 15, 2003, that he had retained

counsel "in connection with his disability claims."  (Joint Submission at 2.)  Plaintiff

commenced litigation over the denial of short-term benefits on December 1, 2004, by filing an

notice, rather than the date defendants made the challenged decision.  2006 WL 2529762, at *7.

action in New York State Supreme Court.  All of the withheld communications occurred after

this date (Joint Submission Ex. J), and thus after a generally adversarial relationship existed

between the parties.  The denial of plaintiff's claim for *long-term* disability benefits, however,

occurred later.  This determination was announced by letter dated January 25, 2005 (Compl.

¶ 14), and must therefore have occurred at some point prior to that date.  It should be noted that

the discovery request challenged by defendants concerns the long-term disability benefits

determination — not the short-term disability benefits over which litigation was already pending

at the time of the withheld communications.  (Joint Submission at 2.)

Thus, all of the withheld communications post-date one challenged determination, but

some pre-date another challenged determination.  Although an adversarial relationship existed as

a general matter between the parties at the time of all withheld communications, the defendants

retained a fiduciary duty with respect to plaintiff's application for long-term benefits.  The

privilege log submitted by the parties contains little information about the content of the emails.

Defendants asserted in a letter to plaintiff that "the withheld materials related to litigation

management and strategy." (Joint Ex. G at 2.)  If this is true, the materials are privileged, but the

privilege log provided by defendants does not entirely support this assertion.

The privilege log does not indicate the subject matter of the communications with any

specificity; most descriptions of withheld documents merely note "re legal advice."  (Joint

Submission Ex. J.)   Two of the entries indicate that the communication was "re litigation,"

which could be read to suggest that the entries labelled "re legal advice" were *not* "re litigation."

(Id.)  In order for the documents that pre-date the denial of long-term benefits to be privileged,

they must pertain not just to the upcoming benefits determination, but to pending or imminent

litigation.  Accordingly, the record as presently submitted by the parties is not sufficient for the Court to make a privilege determination as to each of the withheld communications.[2]

The Court expects, however, that the parties will be able to resolve these issues in light of the standards set forth in this opinion.  If the communications related solely to the pending determination of the long-term disability benefits application, without reference to the pending litigation over the short-term benefits application, they were not privileged.  If, however, the communications pertained to the pending litigation, they were privileged.  Applying these standards, defendants should determine which communications related to pending litigation and which communications did not, and provide to plaintiff a revised privileged log as well as any documents that did not pertain to the pending litigation.[3]

## II.    Depositions Concerning the Long-Term Disability Claim and the Discoverability of Evidence Extrinsic to the Casefile

The second disagreement between the parties concerns the plaintiff's request, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, to depose someone "with knowledge of the denial of long term disability benefits and the denial of the Appeal from that determination."

---

[2] The record is also insufficient to support a finding that the work-product doctrine applies, because it contains no suggestion that the materials were prepared "in anticipation of litigation or for trial."  In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003).

[3] Defendants also argue that the withheld documents are irrelevant, because none of them were reviewed by the Committee in the course of making its determination, and only documents reviewed by the Committee are relevant to this litigation.  (Joint Submission at 6.)  Part II of this opinion clarifies the standards that govern the limited circumstances when documents not part of the evidence reviewed by the administrators may be relevant.  The privilege log does not discuss the specific contents of the documents, so it is not possible for the Court to determine which documents are discoverable under the standards set forth in this opinion, but the Court trusts that the parties will be able to apply those standards without much difficulty.

(Joint Submission Ex. A.)  Specifically, the plaintiff indicated that he intended to ask about the "claim procedures and appeal methodology in force at the time of plaintiff's claimed disability," "any written directives as to the content of denial letters and appeal notices and letters," any written documents setting forth policy with respect to ERISA disability claims, and the original administrative record in plaintiff's case.  (Id.)

Defendants objected to this discovery request on the grounds that the Court's review of plaintiff's claims would be limited to the administrative record.  (Id. Ex. B.)  Therefore, the defendants contend, evidence outside the administrative record, such as deposition testimony, could not be "calculated to lead to the discovery of admissible evidence."  (Id.)

Where a benefits plan gives its administrator broad discretion to determine whether a plan holder is entitled to benefits, a court may reverse the administrator's decision only if it is arbitrary or capricious.  Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996). Defendants point out that the same Plan at issue in this case has been found by several courts to be unconflicted in its review of benefit claims, making its decisions reviewable under the arbitrary and capricious standard.  See, e.g., Ryles v. Pitney Bowes, Inc., No. 01 Civ. 6549, 2002 WL 32348829, at *2 (E.D.Pa. July 23, 2002).

It is not entirely clear whether plaintiff seeks to show that the Plan is not entitled to deferential review.  Plaintiff's portions of the Joint Submission do not dispute that the Plan is entitled to deferential review, but plaintiff's Complaint does allege that "defendants were conflicted in that defendants had a financial stake in the determination of [plaintiff's] claim" (Compl. ¶ 17), which, if true, would mean that deferential review was inappropriate.  Moreover, in the Joint Submission, plaintiff relies on a number of cases discussing a "good cause" standard

for the admission of extrinsic evidence.  (Joint Submission at 3-4.)  The good cause standard is applied to plans that do not receive deferential review, see DeFelice v. American Int'l Life Assur. Co. of New York, 112 F.3d 61, 66 (2d Cir. 1997), such as cases in which the administrator is not disinterested; it does not apply to cases that use the arbitrary and capricious standard.  Id.  Plaintiff has made no effort to explain what "good cause" his discovery requests are calculated to support, nor does it appear that the depositions he seeks would pertain to any basis for applying a less deferential standard of review.  (Joint Submission Ex. A; see id. at 8 (noting that plaintiff has not pursued testimony regarding conflicts).)  It is not necessary to determine whether plaintiff's discovery requests would be permissible under a less deferential standard, however, because even assuming defendants are correct that the arbitrary and capricious standard applies, plaintiff's requests are permissible.[4]

Because courts reviewing under the arbitrary and capricious standard do not consider evidence extrinsic to the administrative record, defendants argue, no evidence beyond that record should be discoverable.  They rely principally on Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995), which held that a district court "erred in considering extrinsic evidence during [a] bench trial to determine whether [certain benefits were] covered under the plan."  Id. at 1071. The Court held that "a district court's review under the arbitrary and capricious standard is limited to the administrative record," meaning "the evidence that the fiduciaries themselves

_____

[4] Plaintiff also points out that defendants have served discovery demands, which he believes renders hypocritical their objection to his taking deposition testimony.  (Joint Submission at 4-5.)  Defendants, however, point out that their discovery requests relate only to clarifying the scope of the administrative record.  (Id. at 9.)  Indeed, defendants' request limits itself to documents plaintiff contends were submitted to or considered by defendants in connection with plaintiff's claim.  (See id. Ex. M.)

10

considered." Id.  The district court had erred by conducting its own analysis of the substantive

question presented to the plan administrators, rather than restricting its review to whether the

determination was arbitrary and capricious.

   Miller went on, however, to conduct its own analysis of whether the challenged

determination was arbitrary and capricious.  In that analysis, as plaintiffs note, Miller relied upon

the deposition testimony of a witness who had participated in the challenged determination.  The

witness, Edward Byrne, was the plan administrator, and the Second Circuit cited his deposition

to demonstrate that certain evidence in the administrative record that purportedly supported the

determination was in fact useless to those who participated in the decision because they did not

understand it.  Id. at 1072.

   Unfortunately, the Second Circuit did not explain why it was appropriate to rely on

Byrne's deposition testimony.  It is not difficult, however, to reconcile the two principles that

emerge from Miller.  On the one hand, it is inappropriate for a district court to engage in its own

analysis of the merits of a denial of benefits.  On the other hand, the fact that review is limited to

"the evidence that the fiduciaries themselves considered," id. at 1071, does not bar courts from

determining what that evidence was.[5]  The conclusion that must be drawn from Miller is that in

order to determine what evidence the fiduciaries considered in reaching their decision, it may be

necessary to consider evidence beyond the actual documents that the administrators reviewed.

--------------------------------------------------

  [5] In Miller, the Second Circuit went beyond identifying the evidence to determine
whether the evidence in the administrative record was meaningful to the fiduciaries who
considered it, presumably because to engage in an analysis based on the court's own
understanding of the significance of the administrative record would be to ignore the principle
that courts should not substitute their judgment for that of the fiduciaries.  If, as the court
concluded, a piece of evidence was meaningless to the administrators, it would be inappropriate
for the court to give it weight.

Miller, of course, did not deal with discovery demands.  "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  In this case, plaintiff's discovery demands, as set forth above, deal entirely with procedures and policy for claims processing, with documents containing such procedures or policy, or with the contents of the administrative record itself.  Such testimony would be admissible under Miller if it helped show what evidence the administrators reviewed.  Under Rule 26(b), it would be appropriate to depose witnesses on topics reasonably calculated to lead to the discovery of what evidence was in front of the plan administrators who denied plaintiff's application.  Thus, plaintiff's deposition requests are not inconsistent with the law governing ERISA cases.

## III.   Deposition Concerning Short-term Disability Benefits

The defendants also object to plaintiff's request to depose a witness with knowledge of the denial of plaintiff's application for short-term disability benefits.  Defendants argue that the same deferential standard of review that applies to benefits governed by ERISA applies to the denial of short-term benefits.  Indeed, the Supreme Court has explained that the deferential standard of review applicable to ERISA plan decisions stems from traditional trust principles, which "make a deferential standard of review appropriate when a trustee exercises discretionary powers."  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989), citing Restatement (Second) of Trusts § 187 (1959).  Plaintiff argues that because ERISA does not apply to these benefits determinations, the deferential standard of review does not apply, but fails to identify

the law that he believes does govern review of non-ERISA benefits determinations.  (Joint

Submission at 5.)

 It is not necessary to determine whether a deferential standard of review would apply to

the short-term disability benefits determination, because the discovery requests in this context

are identical to the discovery requests pertaining to the long-term disability benefits.  Both

requests pertain solely to the procedures and policies used to evaluate the request, and to the

contents of the record before the administrators.  Accordingly, even if the deferential standard of

review applies, plaintiff's discovery requests are permissible for the reasons set forth above.

## IV.   **Timeliness of Interrogatories**

Finally, defendants object to plaintiff's interrogatories because they were not served by

September 11, 2006, the deadline set forth in the Case Management Plan adopted by the Court

on July 28, 2006.  (Joint Submission at 8.)  Plaintiff states that "we were not aware of the subject

deadline until it was brought to our attention by counsel for the defendants," because the Case

Management Plan (CMP) in which the deadline appeared was not emailed to them via the

Court's Electronic Case Filing (ECF) system.  (Joint Submission at 5.)  This excuse is

unpersuasive.  Both parties participated in the creation of the CMP, and both parties appeared at

a conference before the Court on the day it was adopted at which the deadlines set forth in the

CMP were discussed.  Moreover, as parties are reminded in bold-face type by the Court's

Procedures for Electronic Case Filing, "[i]t remains the duty of the attorney for a party to review

regularly the docket sheet of the case."

Excuses aside, it is always preferable for issues to be adjudicated on the merits, rather

than pursuant to discovery sanctions.  Plaintiff's lateness in serving the interrogatories was only

13

a matter of a few weeks, which could not have caused any significant prejudice to defendants or delay in completing discovery. Accordingly, plaintiff's lateness will be excused. The parties should not assume, however, that leniency will be shown in the future. The Court is always open to timely requests to extend deadlines when there is a legitimate need to do so, but there should therefore be little reason for post hoc requests for extensions.

## CONCLUSION

For the foregoing reasons, defendants are directed to provide to plaintiff a revised privilege log, as well as any documents formerly withheld that are discoverable under the standards set forth in this opinion. Defendants are also directed to respond to plaintiff's notice of depositions, and to plaintiff's interrogatories.

The parties are further directed to provide the Court with a revised Case Management Plan making any adjustments necessary due to the delay involved in this discovery dispute. The case management conference previously scheduled for January 5, 2007, is adjourned sine die pending the adoption of a new Case Management Plan.

SO ORDERED.

Dated: New York, New York
December 21, 2006

GERARD E. LYNCH
United States District Judge

14